UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JESSE S. GOLDSTEIN,[1]

                            Plaintiff,

            -against-

THE BOWERY DEFENDANTS, et al.,

                            Defendants.

24-CV-5683 (LTS)

ORDER OF DISMISSAL
WITH LEAVE TO REPLEAD

LAURA TAYLOR SWAIN, Chief United States District Judge:

Plaintiff brings this action *pro se*. He sues more than thirty defendants, invoking the Fair Housing Act (FHA), the Civil Rights Act, 42 U.S.C. § 1983, the Racketeering Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq.*, the Thirteenth and Fourteenth Amendments to the U.S. Constitution, and asserting state law claims for conversion and "breach of fiduciary duty."

By order dated August 7, 2024, the Court granted Plaintiff's request to proceed *in forma pauperis* ("IFP"), that is, without prepayment of fees.[2]

### STANDARD OF REVIEW

The Court must dismiss an *in forma pauperis* complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see* Livingston v. Adirondack Beverage Co., 141 F.3d 434, 437 (2d Cir. 1998). The Court must

---

[1] Although Plaintiff refers to himself in the caption as "Jesse S. Goldstein, Esq.," he has been directed not to hold himself out as an attorney, and the Court therefore does not refer to him as such. *See Matter of Goldstein*, 215 A.D.2d 68, 70, 633 N.Y.S.2d 985 (1995) (directing Goldstein to desist "from holding himself out in any way as an attorney and counselor-at-law").

[2] On August 7, 2024, the Court denied Plaintiff's request for emergency relief. (ECF 4.)

also dismiss a complaint when the Court lacks subject matter jurisdiction of the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

## BACKGROUND

The following allegations are drawn from Plaintiff's complaint, in which he asserts claims about the loss of his New York law license. On an unspecified date, Plaintiff "voluntarily resigned under protest from the New York bar for many reasons" dating back to "January 1992 at least." (*Id.* at 5.) Barry Kamins, who represented Plaintiff in those proceedings, acted improperly because he was a "member of the Grievance Committee" and he allegedly "fixed the case." (*Id.*) In addition, social worker Hillel Bodek, who was also involved in those proceedings, "lacked the credentials." (*Id.*)  Plaintiff contends that these acts "constitute[e] violations of the Racketeering Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 et seq and 1964, 42 USC 1983, 13th Amendment (involuntary servitude, slavery), 14th Amendment Due Process and Equal Protection and New York State fraud." (*Id.*)

Next, Plaintiff asserts claims about the diminution of his inheritance. Plaintiff contends that the estate of his parents should have been worth at least $630,000. However, during the "subprime crisis," the actions of "the Chase group" diminished the value of Sarah and Howard

Goldstein's home (from $630,000 to $450,000). (*Id.*) Plaintiff names as Defendants JP Morgan Chase, its Chief Executive Officer Jamie Dimon, and Martin Gruenberg, Chairman of the Federal Deposit Insurance Corporation (FDIC).

Defendants Martin Goldstein, MD, Peter Clateman, Saul Clateman, Robert Freedman, Esq., and Joyce Clateman, whose relationship to Plaintiff is unclear, allegedly "colluded and conspired to leave Jesse Goldstein, Sarah and Howard Goldstein's caretaker, penniless and homeless which they did by breaching their fiduciary duties." (*Id.* at 6.) Barton Rack, Bonnie Rack, Susan Rack, and Eugene Moskovitz also allegedly "converted" property from the estate of Plaintiff's parents. (*Id.* at 7.) Plaintiff asserts that he "should have received the entire estate but got zero and he became homeless in 2014." (*Id.* at 9.) These individuals also joined with "Abraham Niyazov and Yiosoel Botnick to convert and destroy all of Plaintiff's Jesse Goldstein property at a previous residence including life sustaining medications . . . [and] his entire law book library." (*Id.*) Plaintiff asserts that depriving him of his law books, "constitute[es] the crime of obstruction of justice, a RICO predicate offense." (*Id.*)

Plaintiff also brings claims about his stay at the Bowery Mission shelter and his eventual exclusion from its services. He sues the Bowery Mission, its President and CEO James Winans, the Christian Herald Association, Elizabeth Carabello Esq., Supervisor Julia (or Julie) Doe, John and Jane Doe volunteers, and Social Worker Kathy Doe, collectively "the Bowery Mission Defendants." Plaintiff alleges that, due to antisemitism, the theft of his property was "engineered" and "organized by the Bowery staff" in order to exclude him from the shelter.

On June 15, 2024, Plaintiff was released from the hospital, and he stayed that night at the Bowery Mission. A towel was stolen from his bed, and the replacement towel that he was given was "tiny." (*Id.* at 30.) On the second night, a sheet was missing. On the third night, Plaintiff's

package of two sheets and a towel were all missing. Later on June 18, 2024, Plaintiff was at the

store when he realized that his wallet was missing. The wallet included $141.00 in cash,

Plaintiff's driver's license, his reduced fare MetroCard, and his United Health Care card.

Plaintiff called the Bowery Mission and informed "Julie," who answered the phone, about his

stolen wallet, but she said that there was nothing she could do about it. (*Id.* at 32.) Plaintiff did

learn, however, that his authorized stay would be extended to July 1, 2024.

Shortly thereafter, Plaintiff called back and spoke to a different person, also named Julie,

and who said that she was the supervisor. Plaintiff asked if he could switch his bed and floor,

because he assumed that someone near him at the shelter had taken his wallet, but the supervisor

refused. (*Id.* at 33.) Plaintiff identified himself as an attorney and explained that the Bowery

Mission owed a duty of reasonable care and that the ratio of staff to residents was inadequate.

(*Id.* at 33-34.) The supervisor then screamed at Plaintiff that the Bowery Mission was "not

responsible for" his property. Plaintiff informed her that, in fact, that was not the law; she hung

up the phone. (*Id.* at 34.)

Plaintiff called back and asked for Julie, the supervisor. The volunteer who answered the

phone said that Julie was unavailable. Plaintiff told the volunteer that those at the Bowery

Mission, which purports to be Christian, were "hypocrites" because the Ten Commandments

prohibit stealing and the Bowery Mission was negligent in protecting the property of guests. The

volunteer hung up the phone.

Later that evening, "Kathy" from the Bowery Mission called and said that someone had

"found" Plaintiff's wallet, though she did not know who. (*Id.* at 35.) She told Plaintiff that he

could retrieve his wallet from "Keith" at the Bowery Mission. Plaintiff hurried to the Bowery

Mission, arriving by about 7 p.m. He found Keith, who handed Plaintiff the wallet, which now

contained $14.00. Plaintiff's food stamp card and $127.00 in cash were missing. (*Id.* at 36.) Plaintiff asked about a bed at the shelter but was told that he could not stay because he had not been there at 5 p.m. Since that time, Plaintiff has been sleeping on the subway or a park bench. Later, when Plaintiff attempted to get lunch at the Bowery Mission, he was told that he is "restricted and cannot come to the Bowery Mission because [he] insulted a staff member." (*Id.* at 36.)

Plaintiff reasons that Bowery Mission staff must have stolen his wallet "intentionally to evict and exclude permanently Jesse Goldstein, a Jew." (*Id.* at 38.) First, he argues that if shelter residents had stolen his wallet, they would have taken his driver's license, MetroCard, and healthcare card. (*Id.*) Second, he argues that the timing of the events, and the fact that he was called to retrieve his wallet after the 5 p.m. deadline, supports the conclusion that Bowery Mission staff staged the theft. Moreover, he asserts that his "insult" of staff does not warrant a permanent ban, particularly in light of his otherwise model behavior during previous stays. (*Id.* at 40.) Plaintiff states that his name, Jesse Seth Goldstein, is "a highly recognizable Jewish name," and concludes that he has been discriminated against in housing based on his Jewish religion, in violation of the FHA.

Plaintiff also argues that the Bowery Mission offers illegal short-term rentals, citing the New York City Administrative Code. He contends that the Bowery Mission violated the criminal code, and he seeks treble damages for each day that he was "locked out." (Id. at 43.) Plaintiff sues the City of New York, the NYPD, Mayor Eric Adams, Police Commissioner Edward Caban, Police Officers "John" Gonzalez and "John" Kieffer, John Doe Supervisor, and Inspector Tao Chen, who is the Commanding Officer of the 5th Precinct. With regard to the police defendants, Plaintiff alleges the following:

The body camera footage by PO Gonzalez PO Kiefer and wherein, among other things, Jesse Goldstein, Esq told them he was an attorney and informed them of the Multiple Dwelling Law, the NYC Administrative Code sections 26-251 through 259 which provide that what happened was and is a continuing criminal offense. I also point out that they also conversed with their supervisor in their police car out of my earshot and came out and told me to 'go to court.' Which is exactly what I am doing except instead of landlord tenant I am taking these two police officers and others to federal court.

(*Id*. at 20.)

In 2023, Plaintiff received retroactive awards of social security disability insurance (SSDI) and other social security benefits. (*Id*. at 24.) Funds from the Social Security Administration (SSA) were deposited into an account on October 3, 2023, but "the funds were stolen pursuant to a RICO scheme and Civil Rights violations."[3] (*Id.* at 25.) Defendant Jamie Dimon and Chase engaged "in phony lev[ies]and judgments with corrupt collection attorneys Paul Hooten and David Cohen," despite knowing that the deposit of $98,455 was "exempt income" from a retroactive award of social security benefits. (*Id.*) "The amounts involved are approximately $10,000." (*Id.*)

Plaintiff alleges facts showing that his health has suffered from being without shelter. He has been unable to use his diabetes medication, has edema in his legs, and has been hospitalized twice. (*Id.* at 50.) He argues that United Healthcare should be subject to a temporary restraining order (TRO) from the Court because his member card was "used during the homelessness period and misplaced." (*Id.*) Likewise, he argues that his "EBT was stolen by the Bowery Defendants and so the Human Resources Administration also participated in this matter, which justifies the TRO issuance." (*Id.*)

---

[3] From June 2018 until November 2023, Plaintiff had housing through a "corrupt supporting agency," Services for the Under Served (SUS). (*Id.* at 24, 26.) The theft of Plaintiff's money prevented him from leaving his unsatisfactory housing and delayed his lawsuit "against the corrupt landlord." (*Id.* at 24-25.)

Plaintiff seeks (1) an order declaring that proceedings regarding the revocation of his New York law license were fraudulent; (2) restitution from Defendants Clateman and Martin Goldstein in the amount of $450,000. from his parents' estate; (3) compensatory damages from JP Morgan Chase and Jamie Dimon; and other relief.

## DISCUSSION

### A.    Misjoinder and Severance

Plaintiff's claims can be grouped to correspond to their factual predicates as follows: (1) he was wrongfully deprived of his law license ("the "law license claims"); (2) the wrongful actions of the Chase defendants lowered the value of his parents' assets (their house) and other defendants deprived him of the money in their estate (the "estate claims"); (3) he was barred from the Bowery Mission shelter due to antisemitism (the "shelter exclusion claims"); (4) the NYPD refused to take action regarding the Bowery Mission's violations of the Administrative Code (the "failure to investigate claims"); and (5) the Chase Bank defendants wrongfully permitted execution of a levy on deposits of retroactive social security benefits, which should have been exempt from levy (the "wrongful levy claims").

Rule 20 governs a plaintiff's ability to bring claims against multiple defendants in a single suit. See Fed. R. Civ. P. 20(a)(2).  A plaintiff may join multiple defendants in one action if:

> (A) any right to relief is asserted against them jointly [and] severally . . . arising out of the same transaction, occurrence, or series of transactions and occurrences; *and*

> (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2) (emphasis added).

"As is clear from the plain language of Rule 20(a)(2), both criteria must be met for joinder to be proper." *Deskovic v. City of Peekskill*, 673 F. Supp. 2d 154, 159 (S.D.N.Y. 2009).

In considering whether claims arise from the same "transactions or occurrences," courts must assess the logical relationship between the claims and determine whether the "essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *Id.* at 166 (citations omitted); *Graham-Johnson v. City of Albany*, No. 1:19-CV-01274, 2021 WL 1614763, at *6 (N.D.N.Y. Apr. 26, 2021) (courts in the Second Circuit have "repeatedly have interpreted the phrase 'same transaction' to encompass 'all logically related claims.'"). Where the link between acts of wrongdoing is "too attenuated, factually and temporally," it will not support a causal connection. *Deskovic*, 673 F. Supp. 2d at 166-67 (where claims rest on "conduct that occurred years earlier, [the] broad temporal gap substantially weakens Plaintiff's claim of a logical connection").

It is well established that "the mere allegation that Plaintiff was injured by all Defendants is not sufficient to join unrelated parties as defendants in the same lawsuit pursuant to Rule 20(a)." *Barr Rubber Products Co. v. Sun Rubber Co.*, 425 F.2d 1114, 1126–27 (2d Cir. 1970); *Precision Assocs., Inc. v. Panalpina World Transp., (Holding) Ltd.*, No. CV-08-CV-0042, 2013 WL 6481195, at *39 (E.D.N.Y. Sept. 20, 2013) ("Although Rule 20 is permissive, it cannot be met merely by joining together defendants that have no relationship other than that they violated the law in the same way against the same plaintiff."), R & R adopted, 2014 WL 298594 (E.D.N.Y. Jan. 28, 2014).

Plaintiff argues that these claims are properly brought in a single action because "all of the Defendants in one way or another illegally deprived [Plaintiff] of his property beginning with the actions of Saul Clateman and Freedman in 2008 forward." (ECF 1 at 3.) He asserts that Rule 20 is satisfied because his claims arise from a "series of transactions or occurrences" and there is a "common question as to the wrongful taking of Plaintiff's property." (*Id.*) This argument, that

defendants are properly joined because they have all harmed Plaintiff by depriving him of property in some way at some time, must be rejected as noncompliant with Rule 20. *See, e.g.*, *J.T. v. de Blasio*, No. 20 CIV. 5878 (CM), 2020 WL 6748484, at *26 (S.D.N.Y. Nov. 13, 2020) (holding that allegations that "the defendants merely committed the same type of violation in the same way" are insufficient to justify joinder). For example, Plaintiff's claims about the levy on his social security benefits do not arise from the same transaction as, or share a question of law or fact with, his claims that he was excluded from the Bowery Mission shelter due to antisemitism. Plaintiff fails to meet his burden of showing that these disparate claims against unrelated defendants are properly joined in one action. *See Jem Accessories, Inc. v. JVCKENWOOD USA Corp.*, No. 20-CV-4984 (GHW), 2021 WL 706646, at *3 (S.D.N.Y. Feb. 22, 2021) ("The plaintiff bears the burden of demonstrating that joinder is warranted under Rule 20.").

Many of Plaintiff's claims arose more than a decade ago and may be time-barred, such as his claim arising from his resignation from the New York bar in or around 1995, his claims about the diminished value of his parents' home during the 2008-2009 financial crisis, and the loss in 2014 of the inheritance that he had expected. It is also unclear whether he intends to assert claims regarding all of the events he describes. Although Plaintiff has named defendants in connection with these claims, he also indicates in the complaint that he is describing some events "by way of background." *See*, *e.g.*, Complaint (ECF 1 at 5) ("By way of background Plaintiff voluntarily resigned under protest from the New York bar for many reasons . . . .")  In contrast, Plaintiff labels his claim about exclusion from the Bowery Mission in July 2024, in all capital letters, as follows: "THE FACTS OF THE PRESENT LAWSUIT – THE BOWERY MISSION." (ECF 1 at 29.); *see also Id.* at 9 ("[T]his case concerns the exclusion of a resident, Jesse Goldstein, of the

Bowery Mission."). The Court thus treats Plaintiff's claims against the Bowery Mission as the gravamen of his complaint and considers severance of the other misjoined claims.

Rule 21 provides that, "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21. "[I]f a court concludes that defendants have been improperly joined under Rule 20, it has broad discretion under Rule 21 to sever parties or claims from the action." *Deskovic*, 673 F. Supp. 2d at 159-60 (citing Fed. R. Civ .P. 21). In considering whether to drop a party, courts in this district consider three factors in addition to the requirements of Rule 20(a)(2) discussed above: "'(1) whether severance would serve judicial economy; (2) whether prejudice to the parties would be caused by severance; and (3) whether the claims involve different witnesses and evidence.'" The Court applies these factors here as follows. First, because these claims are unrelated, judicial economy is not served by litigating them together. Second, severance does not prejudice the parties; in fact, severance will reduce the potential for prejudice from confusion of the factual issues and claims. Third, adjudication of the claims against each defendant will require independent discovery, because the claims involve different witnesses and evidence. For these reasons, the Court concludes that it is appropriate to sever, under Rule 21, Plaintiff's claims other than the shelter exclusion claims against the Bowery Mission defendants.

Accordingly, the Court dismisses Plaintiff's claims against the following defendants, without prejudice to his repleading those claims in a separate action in state or federal court, as appropriate: Eric Adams, Yisroel Botnick, Edward Caban, Tao Chen, Andrew Clateman, Joyce Clateman, Peter Clateman, Jamie Dimon, Robert Freedman, Martin Goldstein, John Gonzalez, Martin Gruenberg, Human Resources Administration (SNAP), J.P. Morgan Chase, Fedy Jacobson, Barry Kamins, John Kiefer, Guy James Mangano, Abraham Niyazov, Barton Rack,

The City of New York, The J.P. Morgan Chase Defendants, The NYPD Defendants, The New York Law License Defendants, Saul Clateman, The Troy Avenue Defendants. *See*, *e.g.*, *Gordon Surgical Grp., P.C. v. Empire Healthchoice HMO, Inc*., No. 1:21-CV-4796 (GHW), 2024 WL 3012637, at *1 (S.D.N.Y. June 12, 2024) (dismissing misjoined claims "without prejudice to plaintiffs' pursuing each of their claims . . . in any appropriate federal or state court").

**B.    Fair Housing Act**

Plaintiff invokes the FHA as the basis for his claims against the Bowery Mission defendants. The FHA prohibits discrimination "against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status . . . national origin" or disability. 42 U.S.C.§ 3604(b), (f). At the pleading stage, there is no requirement that a plaintiff bringing a disparate-treatment claim under the FHA make out a prima facie case under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *See Palmer v. Fannie Mae*, 755 F. App'x 43, 45 (2d Cir. 2018) (summary order). To state a claim of intentional discrimination under the FHA, a plaintiff must allege facts showing that he is "a member of a protected class," that he "suffered relevant 'adverse' treatment," and he must sustain "a minimal burden of showing facts suggesting an inference of discriminatory motivation." *Id.* at 45 (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015). Thus, "a plaintiff may not need to prove that [his] protected status was a but-for cause of the adverse action [he] suffered, but only a motivating factor." *Id.* at 46 (citing Vega, 801 F.3d at 86).

Plaintiff's allegations, however, do not include facts that could plausibly support even a minimal inference of discriminatory motivation. The fact that Plaintiff's name might suggest that he is Jewish, and his related assertion that defendants were therefore aware of his religion, do not support his inference of discriminatory intent. This is particularly true in light of the fact that

Plaintiff had been authorized to stay at the Bowery Mission many times, when defendants also were presumably aware that he might be Jewish.

Plaintiff also argues that banning him is too harsh a sanction for the purported reason for his exclusion – that he insulted staff by referring to them as hypocrites, at a time when he was extremely upset about the loss of his wallet (which included most of the limited resources available to him). Even if, based on the facts alleged, the Bowery Mission's sanction might be harsher than seems warranted, Plaintiff's allegations do not state a claim for a violation of his rights under the FHA. Moreover, although the Second Circuit has not reached the issue, district courts in this district have concluded that the FHA does not apply to shelters. *See*, *e.g.*, *Jenkins v. New York City Dep't of Homeless Servs.*, 643 F. Supp. 2d 507, 517 (S.D.N.Y. 2009).

The Court therefore dismisses Plaintiff's claims against the Bowery Defendants under the FHA for failure to state a claim on which relief can be granted. 28 U.S.C. § 1915(e)(2)(B)(ii).

## C.    Eighth Amendment Claim

Plaintiff argues that the Bowery Mission's permanent "ban" constitutes "cruel and unusual punishment," in violation of the Eighth Amendment. Because Plaintiff asserts a claim for a violation of his constitutional rights, the Court construes this assertion as a claim under 42 U.S.C. § 1983. To state a viable claim under Section 1983, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law, or a "state actor." *West v. Atkins*, 487 U.S. 42, 48-49 (1988).

 Nothing in the complaint suggests that the Bowery Mission is a state actor. Plaintiff describes the Bowery Mission as "a faith-based organization which is *supposed* to help the homeless." (ECF 1 at 9 (emphasis original).) The activity of a private entity can be attributed to the state in only three situations: (1) the entity acts using the coercive power of the state or is

controlled by the state (the "compulsion test" ); (2) the entity willfully participates in joint activity with the state or its functions are entwined with state policies (the " joint action" or "close nexus" test); or (3) the state has delegated a public function to the entity (the " public function" test). *See Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012). The fundamental question under each test is whether the private entity's challenged actions are "fairly attributable" to the state. *Id.* (citing *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982)).

Here, the challenged actions are the Bowery Mission's provision of shelter to the homeless. "It is well established that the provision of low-cost supportive housing is not a 'public function.'" *George v. Pathways to Housing, Inc.*, No. 10-CV-9505 (ER), 2012 WL 2512964, at *4 (S.D.N.Y. June 29, 2012). Thus, there is no basis for concluding that the Bowery Mission's actions, in providing shelter to the homeless, are fairly attributable to the state or otherwise constitute state action. Accordingly, the U.S. Constitution does not govern the Bowery Mission's actions. *See, e.g., Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) ("[T]he United States Constitution regulates only the Government, not private parties.")*; George v. Pathways to Housing, Inc.*, No. 10-CV-9505 (ER), 2012 WL 2512964, at *4 (S.D.N.Y. June 29, 2012) ("It is well established that the provision of low-cost supportive housing is not a 'public function.'"). Plaintiff thus fails to state a claim against the Bowery Mission defendants under Section 1983 for a violation of his constitutional rights.[4] 28 U.S.C. § 1915(e)(2)(B)(ii).

---

[4] Even if the Bowery Mission were a state actor, the Eighth Amendment claim would fail because that Amendment's protections against cruel and unusual punishment apply only to criminal and certain civil punishments imposed by the government. *See Austin v. United States*, 509 U.S. 602, 609 (1993). And because the Bowery Mission and its employees are not state actors, a Section 1983 claim against these defendants also fails to the extent it is based on the Equal Protection Clause of the Fourteenth Amendment.

## LEAVE TO AMEND

Plaintiff proceeds in this matter without the benefit of an attorney. District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988).

Because the Court has dropped, under Rule 21, all defendants other than the Bowery Mission defendants and has dismissed those claims without prejudice, the Court does not grant Plaintiff leave to replead those claims in this action.

As for Plaintiff's claims against the Bowery Mission defendants, although the Court is unaware of any basis on which Plaintiff could proceed, in an abundance of caution, the Court grants Plaintiff 30 days' leave to amend his complaint to replead his claims. If Plaintiff does not file an amended complaint within the time allowed, the Court will direct the Clerk of Court to enter judgment in this action.

## CONCLUSION

The Court severs, under Fed. R. Civ. P. 21, Plaintiff's claims against the following defendants and dismisses them without prejudice to his repleading those claims in a separate action in state or federal court, as appropriate: Eric Adams, Yisroel Botnick, Edward Caban, Tao Chen, Andrew Clateman, Joyce Clateman, Peter Clateman, Jamie Dimon, Robert Freedman, Martin Goldstein, John Gonzalez, Martin Gruenberg, Human Resources Administration (SNAP), J.P. Morgan Chase, Fedy Jacobson, Barry Kamins, John Kiefer, Guy James Mangano, Abraham Niyazov, Barton Rack, The City of New York, The J.P. Morgan Chase Defendants, The NYPD Defendants, The New York Law License Defendants, Saul Clateman, The Troy Avenue Defendants. The Clerk of Court is directed to terminate these defendants on the docket.

The Court dismisses Plaintiff's claims against the Bowery Mission defendants (the Bowery Mission; Christian Herald Association; James Winans; Elizabeth Carabello; Supervisor Julia (or Julie) Doe, John and Jane Doe volunteers, and Kathy Doe) for failure to state a claim on which relief can be granted. 28 U.S.C. § 1915(e)(2)(B)(ii). The Court grants Plaintiff 30 days' leave to amend his complaint to replead his claims against the Bowery Mission defendants. The Court directs the Clerk of Court to hold this matter open on the docket until a civil judgment is entered.  The claims will be dismissed with prejudice if no amended pleading is filed or if the amended pleading is insufficient to state a claim against these defendants upon which relief may be granted.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated:    August 12, 2024
          New York, New York

                              /s/ Laura Taylor Swain
                              LAURA TAYLOR SWAIN
                              Chief United States District Judge